IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRACI STANFORD, guardian of ) | |
| LILLIAN FLETCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07 C 6358 |
| ) | |
| ) | |
| CHICAGO POLICE SGT. FERNANDO ) | Judge Joan H. Lefkow |
| GARCIA, star #1670, CHICAGO POLICE ) | |
| OFFICER WILFREDO ROMAN, star #17631, ) | |
| SHERRY PONCE-DELEON, CHARLENE ) | |
| VALENTINE, BARABARA HAYNES, and the ) | |
| CITY OF CHICAGO, a municipal corporation, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lillian Fletcher ("Fletcher"), brought this action under 42 U.S.C. § 1983 and 1988 and the laws of the State of Illinois, against police officers Fernando Garcia and Wilfredo Roman ("officer defendants"), Chicago Department of Senior Services employees Sherry Ponce-DeLeon, Charlene Valentine, and Barbara Haynes ("CDSS defendants"),[1] and the City of Chicago. The CDSS defendants now move to dismiss count VI, which asserts a §1983 claim against the CDSS defendants for violations of Fletcher's Fourteenth Amendment substantive due process rights, and for their dismissal from count VII, a state law claim against the CDSS

---

[1] Fletcher refers to Sherry Ponce-DeLeon, Charlene Valentine, and Barbara Haynes as the Chicago Department of Aging (CDOA) Defendants. Because the Chicago Department of Aging is now referred to as the Chicago Department of Senior Services, the court refers to these defendants as the CDSS defendants.

1

defendants and the officer defendants for the intentional infliction of emotional distress.[2] For the following reasons, the CDSS defendants' motion [#42] will be granted.

## LEGAL STANDARD

A defendant may bring a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim on which relief may be granted. *EEOC* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded allegations in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. *Jackson* v. *E.J. Branch Corp.*, 176 F.3d 971, 977-978 (7th Cir. 1999). In order to survive a motion under Rule 12(b)(6), the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic* v. *Twombly*, 550 U.S. 544, 555, 126 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotations omitted) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). A plaintiff is obliged to "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions." *Id.* (internal quotations omitted). In other words, the allegations must be "enough to raise a right to relief above the speculative level." *Id.* (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235-236 (3d ed. 2004)).

## FACTUAL BACKGROUND

Fletcher's complaint arises from a series of events that occurred on or about October 29, 2007. At that time, Fletcher was eighty-two years old and living independently. Third Am. Compl. ¶¶ 9, 10. Fletcher had been receiving services from CDSS for over five years. *Id.* ¶ 11.

---

[2] The CDSS Defendants' motion to dismiss was filed before this court granted the plaintiff leave to file a third amended complaint. As the allegations regarding the CDSS defendants in third amended complaint [Docket No. 69] are identical to those in the second amended complaint [Docket No. 24], the court treats their motion as one to dismiss the third amended complaint. For the sake of brevity, the court will refer to the third amended complaint as "the complaint."

Because Fletcher did not want CDSS workers to come to her home, her receipt of these services had been facilitated by Fletcher's family members. *Id*. ¶¶ 11, 14. CDSS was aware of Fletcher's wishes and had her family's contact information, including their phone numbers. *Id*. ¶¶ 14, 67. Without any reason to believe that Fletcher was in need of intervention and without making prior arrangements with Fletcher or her family, the CDSS defendants went to Fletcher's home to conduct an interview. *Id*. ¶¶ 13, 15. From inside her home, Fletcher informed the CDSS defendants that she did not want their services. *Id*. ¶ 16. The CDSS defendants then called the Chicago police department. *Id*.

When the police arrived at Fletcher's home, she informed them that she was fine and did not want them to enter her home. *Id*. ¶¶ 17-18. Without justification, the police forced entry into Fletcher's home and deployed a TASER stun gun against her several times. *Id*. ¶¶ 20-25. As a result of these events, Fletcher suffered damages as a result of her great physical pain, including burns to her stomach and fluid in her head, severe emotional and mental suffering, and medical expenses. *Id*. ¶¶ 27-28.

## DISCUSSION

### I. Fletcher's § 1983 Claim for Violations of her *Fourteenth Amendment* Substantive Due Process Rights (Count VI).

Fletcher contends that the CDSS defendants owed her a duty of protection which they failed to fulfill when they chose to call the Chicago police instead of first requesting assistance from her family. *See* Third Am. Compl. ¶¶ 67-69. Fletcher argues that in doing so, the CDSS defendants placed Fletcher in danger or at a heightened risk of harm, in violation of her substantive due process rights under the *Fourteenth Amendment*. *Id*. ¶¶ 71-72.

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney* v. *Winnebago County Dept. of*

3

*Social Services*, 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). The clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195. In certain limited circumstances, however, "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. The Supreme Court has explained that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *Id.*

*DeShaney* has been interpreted by the Seventh Circuit to mean that the Constitution imposes upon the state both "a duty to protect individuals with whom it has a 'special relationship' by virtue of the state's custody over the individual" and "a duty to protect individuals against dangers the state itself creates under the state-created danger doctrine." *King* v. *East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007). The Seventh Circuit recently explained that while "[s]ome cases distinguish between the state's duty not to inflict harm and its duty to protect someone whom it has rendered helpless," the two classes of cases are functionally the same. *Sandage* v. *Bd. of Commissioners of Vanderburgh County*, 548 F.3d 595, 598 (7th Cir. 2008). "[I]n both classes of case the victim is safe before the state intervenes and unsafe afterward." *Id. See*, *e.g.*, *Reed* v. *Gardner*, 986 F.2d 1122 (7th Cir. 1993) (a family who had been injured by a drunk driver was entitled to maintain a claim for violation of their substantive due process rights against police where police had removed a sober driver and left

4

behind a passenger whom they knew to be drunk with the car keys). In *Sandage*, the Seventh Circuit reaffirmed the three principles outlined in *King* to determine whether the plaintiff can complain under the Fourteenth Amendment of a failure to protect: (1) the state, by its affirmative acts, must create or increase a danger faced by an individual; (2) the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual; and (3) the state's failure to protect the individual must shock the conscience. *Sandage*, 548 F.3d at 599 (quoting *King*, 496 F.3d at 817-18).

Fletcher contends that by calling the police rather than her family, the CDSS defendants undertook an affirmative act which "escalated the situation to one that included the use of force, moreover, the use of state force." Pl.'s Resp. at 5.[3] The CDSS defendants argue that their act of calling the police did not place Fletcher in danger or increase her risk of danger. *See* Def.'s Reply at 3. As the CDSS defendants point out, Fletcher does not contend that the CDSS defendants asked or otherwise encouraged the police to force entry into her home and deploy a taser against her person. Neither does she contend that the CDSS defendants knew or should have known *a priori* that calling the police would result in such actions. If Fletcher is asking the court to infer that every time the police are called to assist with an individual, that individual is placed in danger or their risk of danger is increased, the court declines to do so. In fact, the opposite inference is warranted. The essential purpose of police is to *minimize* danger. As Fletcher fails to plead allegations sufficient to establish that the defendants created or increased her risk of danger, Count VI must be dismissed.

---

[3] In her complaint, Fletcher asserts that the CDSS defendants owed her a duty of protection because a "special relationship" had been created between the CDSS and Fletcher based on the fact that they had provided services to her for over five years. *See* Third Am. Compl. ¶ 66. In her response, however, Fletcher argues that the CDSS had a duty to protect her because it created the danger, and appears to concede that she is not seeking to equate the relationship between herself and the CDSS defendants to one in which the plaintiff is in a custodial setting. *See* Pl.'s Resp. at 6-7. Accordingly, the court proceeds under the assumption that the duty Fletcher contends the CDSS defendants owed her arose from their alleged creation of a dangerous situation.

**II.     Fletcher's Claim for Intentional Infliction of Emotional Distress (Count VII).**

Although Fletcher's only federal claim against the CDSS defendants has been dismissed, this court may elect to exercise supplemental jurisdiction over Fletcher's state law claim against the CDSS defendants for the intentional infliction of emotional distress because the conduct underlying it is identical to that underlying Fletcher's § 1983 claim. *See* 28 USC § 1367(a); *Wright* v. *Assoc. Ins. Co.*, 29 F.3d 1244, 1250 (7th Cir. 1994). "[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims." *Wright*, 29 F. 3d at 1251. When all federal claims have been dismissed, the balance of factors usually points to relinquishing state law claims; however, where sending the case to another court will cause substantial duplication of effort or when it is absolutely clear how the pendent claims may be resolved, it is appropriate for the district court to retain jurisdiction and resolve the claims on the merits. *Id*. at 1251. *See also Arrington* v. *La Rabida Children's Hosp*., No. 06 C 5129, 2008 U.S. Dist. LEXIS 103031, at *44-47 (N.D. Ill. Dec. 22, 2008) (where plaintiff's federal claims had been dismissed and where related state law claims for defamation and intentional infliction of emotional distress were straightforward, a court may elect to exercise supplemental jurisdiction over the state law claims in order to dismiss them). This is a case where the balance of these factors weigh in favor of deciding Fletcher's intentional infliction of emotional distress claim because its resolution is obvious in light of this court's discussion regarding her § 1983 claim. In addition, relinquishing jurisdiction could subject the state court to a duplication of effort.

Under Illinois law, the three elements necessary to state a cause of action for intentional infliction of emotional distress are (1) the conduct involved must be truly extreme and outrageous, (2) the actor must either *intend* that his conduct inflict severe emotional distress, or

know that there is at least a high probability that his conduct will cause severe emotional distress, and (3) the conduct must in fact cause *severe* emotional distress. *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 80, 207 Ill. 2d 263, 278 Ill. Dec. 228 (2003) (emphasis in original). "[T]o qualify as outrageous the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* at 83. Fletcher bases her claim on the CDSS defendants' decision to call to the police to help gain entry into Fletcher's home despite the lack of urgent circumstances and despite their customary practice of calling Fletcher's family when problems with administering services to her arose. *See* Pl.'s Resp. at 8. As discussed above, requesting assistance from the police does not increase one's exposure to harm, nor does it constitute conduct which is "regarded as intolerable in civilized society." Fletcher therefore fails to plead that the CDSS defendants engaged in extreme and outrageous conduct. Furthermore, Fletcher makes no allegations from which it may be inferred that the CDSS defendants intended to cause Fletcher emotional distress by calling the police. Accordingly, Fletcher fails to state a claim for intentional infliction of emotional distress against the CDSS defendants.

## CONCLUSION

For the foregoing reasons, the CDSS defendants' motion to dismiss counts VI and VII of the complaint [#42] is granted. Count VI is dismissed with prejudice and the CDSS defendants are dismissed with prejudice from Count VII.

Dated: March 31, 2009          Enter: _____

                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge